J-S25039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE G. ELLIOTT | : | |
| | : | |
| Appellant | : | No. 1769 WDA 2017 |

Appeal from the Judgment of Sentence July 12, 2017
In the Court of Common Pleas of Crawford County
Criminal Division at No(s):  C.R. No. 42-1977

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 09, 2018**

George G. Elliott appeals from the judgment of sentence imposed on July 12, 2017, in the Court of Common Pleas of Crawford County, after he was resentenced, pursuant to **Miller v. Alabama**, 567 U.S. 460 (2012) and **Montgomery v. Louisiana**, 136 S. Ct. 718 (2016).  In 1977, Elliott was convicted by a jury of first degree murder[1] and sentenced, in 1978, to life without parole (LWOP).  He was 17 years old at the time he committed the crime.  Following the issuance of the United States Supreme Court decisions in **Miller** and **Montgomery**, the trial court resentenced Elliott on the murder charge to a term of 50 years' to life imprisonment.[2]  Elliott contends (1)

_____

[1] **See** 18 Pa.C.S. § 2502.  Elliott was also convicted of arson at a separate docket number.

[2] Elliott received credit for presentence incarceration of 40 years, 5 months, and 11 days.  **See** Order, 7/12/2017.

because Pennsylvania sentencing statutes for first and second degree murder were invalidated by **Miller**, the only constitutional sentence available is that of 10-to-20 years' imprisonment for third degree murder at the time of the offense, and (2) it is unconstitutional to impose a sentence of 50 years to life, a *de facto* sentence of life imprisonment without the possibility of parole (LWOP), on a juvenile absent a finding that the juvenile is one of the rare and uncommon juveniles who is permanently incorrigible, irreparably corrupt or irretrievably depraved. Based upon the following, we affirm.

The background of this case is, as follows:

On June 16, 1977, a jury convicted [Elliott] of first-degree murder and arson for crimes he committed when he was seventeen years of age. On March 6, 1978, the trial court sentenced [Elliott] to life imprisonment for the murder conviction and a five to ten year concurrent sentence for the arson conviction. By per curiam order entered June 20, 1979, this Court affirmed [Elliott's] judgment of sentence. **Commonwealth v. Elliott**, 417A.2d 780 (Pa. Super. 1979). On October 4, 1979, our Supreme Court denied [Elliott's] *allocatur* petition.

**Commonwealth v. Elliott**, 34 A.3d 235 (Pa. Super. 2011) (unpublished memorandum) (affirming the denial of relief sought pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546). The United States Supreme Court subsequently decided **Miller** in 2012, and **Montgomery** in 2016.

In **Miller, supra,** the Supreme Court of the United States held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual

punishments.'" ***Id.***, 567 U.S. at 465. Under ***Miller***, only where a court finds that the juvenile homicide defendant is permanently incorrigible, irreparably corrupt, or irretrievably depraved is the court permitted to impose a LWOP sentence upon the juvenile. ***Miller***, at 471, 473, 479-480 (citations omitted). Thereafter, in ***Montgomery***, the United States Supreme Court held that the ***Miller*** decision applies retroactively to cases on collateral review. ***Id.*** at 732-737. Following ***Miller*** and ***Montgomery***, our Supreme Court issued ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) (***Batts II***), which addressed the procedural requirements for sentencing a juvenile homicide defendant.

On June 28, 2016, based on ***Montgomery***, Elliott obtained PCRA relief in the form of resentencing. On July 12, 2017, the trial court resentenced Elliott, as stated above. Elliott filed a timely post-sentence motion, which was denied, and this appeal followed.[3]

Initially, we state our standard of review:

A juvenile offender who challenges a LWOP sentence raises issues that involve mixed questions of fact and law. ***[Commonwealth v. Batts***, 163 A.3d] at 434-436. Because ***Montgomery*** makes clear that a juvenile homicide offender may receive a LWOP sentence only if he or she is found incapable of rehabilitation, such a finding *ipso facto* implicates the trial court's authority to impose such a sentence. ***Id.*** at 434-435. This threshold legal inquiry constitutes a pure question of law subject to *de novo* review. ***Id.*** at 435. To the extent, however, the determination is based on

---

[3] Elliott timely complied with the order of the trial court to file a statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b).

factual findings made by the trial court at the sentencing hearing, those findings are reviewed for an abuse of discretion. ***See id.*** at 435-436.

***Commonwealth v. Foust,*** 180 A.3d 416, 429 (Pa. Super. 2018).[4]

In his first issue, Elliott contends that because ***Miller*** invalidated the first and second degree murder statutes for juveniles, the only available constitutional statute was a sentence for third degree murder, which at the time of the offense carried a penalty of 10 to 20 years' imprisonment. Elliott, however, concedes that "this argument, or those very similar, have been summarily rejected by the Pennsylvania Supreme Court in ***Commonwealth v. Batts***, 163 A.3d 410 (Pa. 2017) … and this Honorable Court in ***Commonwealth v. Foust***, [180 A.3d 416 (Pa. Super. 2018)]." Elliott's Brief at 9. As Elliott is correct that our Courts have already addressed a claim such as the one he presents herein, we need not discuss this issue further.

In his second issue, Elliott maintains "it [is] unconstitutional to impose a sentence of [50] years to life, a *de facto* sentence to life imprisonment without the possibility of parole, on a juvenile absent a finding that the juvenile is one of the rare and uncommon juveniles who is permanently incorrigible, irreparably corrupt or irretrievably depraved." ***Id.***

---

[4] We note that presently, in ***Foust***, a petition for allowance of appeal has been filed and is pending at 126 WAL 2018 (Pa. 2018).

Elliott argues that in **Foust, supra**, this Court held that "a trial court may not impose a term-of-years sentence, which constitutes a *de facto* LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation." Elliott's Brief at 9, citing **Foust,** 180 A.3d at 431. Elliott further asserts:

> Given the age of the defendant and the life expectancy of long term inmates, this sentence was, in effect, a life sentence without a reasonable chance of parole.[5] As such, this 50 years to life sentence was an abuse of discretion, excessive, unreasonable, arbitrary and capricious even in light of **Batts II**."[6]

Elliott's Brief, **id.**

In **Foust**, the Court considered two consecutive 30 years-to-life sentences, and determined that for purposes of **Miller**, the two sentences must be examined separately. **Id.**, 180 A.3d at 438. The **Foust** Court

---

[5] Elliott does not refer this Court to any data in the record regarding the life expectancy of long term inmates. In any event, such evidence would not have been useful. **See Commonwealth v. Bebout**, 186 A.3d 462, 469 (Pa. Super. 2018) ("[E]ven if Appellant had properly admitted into evidence the relevant life expectancy statistics that he now raises in his brief, it is not evident how helpful they would have been to the construction of a standard for what constitutes a *de facto* LWOP sentence, or how such data dictates a result in this case").

[6] In **Batts II**, the Pennsylvania Supreme Court addressed the decisions in **Montgomery** and **Miller** and held "there is a presumption against the imposition of a sentence of life without parole for a defendant convicted of first-degree murder committed as a juvenile." **Batts II**, 163 A.3d at 459. The **Batts** Court also addressed the trial court's discretionary sentencing determination and sentencing procedure, instructing, *inter alia*, "section 1102.1 [18 Pa.C.S. § 1102.1] will help frame the exercise of judgment by the court in imposing sentence …." **Id.** at 458 (quotations omitted).

reasoned that a 150-year minimum sentence would clearly constitute a *de facto* LWOP sentence, and concluded a sentence of 30 years to life imprisonment clearly does not constitute a *de facto* LWOP sentence. **Id.** More recently, in **Commonwealth v. Bebout**, 186 A.3d 462 (Pa. Super. 2018),[7] this Court held that a sentence of 45 years-to-life is not a *de facto* LWOP sentence. The **Bebout** Court opined:

> Instantly, Appellant's 45-life sentence falls between the "clearly" constitutional and unconstitutional parameters suggested by the **Foust** Court. We note, however, that the **Foust** Court's choice of a 150-year minimum sentence appears to be merely illustrative. Undoubtedly, the Court intended to suggest a sentence that clearly exceeded human life expectancy in absolute terms, rather than average life expectancy, or the life expectancy of some identifiable subset of the population. In that regard, the **Foust** Court could just have easily listed 120-year or 100-year minimum sentences as examples of what "clearly" constitutes a *de facto* LWOP sentence, as the number of humans who could possibly survive their minimum sentence would be virtually nil. The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Graham [v. Florida**, 560 U.S. 48, 75 (2010)]. Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, **potentially** meaningful, it must at least be **plausible** that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits. Thus, though it expressly declined to do so, the **Foust** Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150-years-to-life sentence constitutes a *de facto* LWOP sentence. If it had any other standard in mind for making that determination, the **Foust** Court's analysis omitted it.

---

[7] On July 10, 2018, this Court denied Bebout's application for reargument.

Instantly, Appellant was sentenced to 45-life, and he has already been incarcerated for this crime since he was 15 years old. Accordingly, Appellant will be eligible for parole when he is 60 years old. …

\*\*\*\*

… Appellant's sentence does not fall into the category of sentences described in **Foust**; that is, his minimum sentence is not so long that it is virtually certain that he could not survive it. Indeed, it is at least plausible, and perhaps even likely, that Appellant could live many years past his earliest possible release date.

Appellant argues that delaying parole until old age in these circumstances (**see** footnote 3, *supra*), constitutes a constitutional violation because, ostensibly, it would not provide for a meaningful opportunity for release. **See** Appellant's Brief at 26 (citing **Bear Cloud v. State**, 2014 WY 113, 334 P.3d 132 (Wyo. 2014), and **State v. Null**, 836 N.W.2d 41 (Iowa 2013)). Neither **Bear Cloud** nor **Null** are controlling in this jurisdiction, and we find their analyses unpersuasive at this time. Indeed, we consider Appellant's opportunity for release to be meaningful, especially in light of the gravity of his crime, because he has the **potential** to live for several decades outside of prison if paroled at his minimum.

Thus, based on the record and arguments before us, we conclude that Appellant has simply failed to meet his burden of demonstrating that the lower court sentenced him to a *de facto* LWOP sentence. There simply is no comparison between the opportunity to be paroled at 60 years of age and 100+ years of age. The difference is, quite literally, a lifetime. As such, we are not convinced that Appellant's sentence is the functional equivalent of LWOP. Accordingly, Appellant's first claim must fail.

**Id.** at *8-10, *13-14 (emphasis in original).

Here, Elliott was resentenced to 50 years' to life imprisonment, and he has already been incarcerated for 40-plus years. As Elliott was 60 years old

at the time of resentencing,[8] he will be eligible for parole when he is approximately 70 years old. While Elliott will be 10 years older than the defendant in *Bebout,* who becomes eligible for parole at age 60, it is important to note that the *Bebout* Court found the defendant in that case had "the *potential* to live for several decades outside of prison if paroled at his minimum." *Id.* at *14 (emphasis in original) (footnote omitted). As such, we conclude Elliott's sentence is not a *de facto* life sentence since, as in *Bebout*, Elliott has a meaningful possibility of parole. Therefore, we conclude no relief is due on Elliott's claim that the 50 years' to life sentence constituted a *de facto* life sentence.[9]

We next turn to review Elliott's argument that the trial court abused its discretion in imposing a sentence of 50 years' to life imprisonment. In order to obtain review of a challenge to the discretionary aspects of sentencing, an

---

[8] *See* Trial Court Opinion, at 5 (noting Elliott was born in April of 1957).

[9] We recognize that on June 19, 2018, the Pennsylvania Supreme Court granted allowance of appeal from the Order of this Court in *Commonwealth v. Felder*, 181 A.3d 1252 (Pa. Super. 2017) (unpublished memorandum), as to the following issue:

> Does not a sentence of 50 years to life imposed upon a juvenile constitute a *de facto* life sentence requiring the sentencing court, as mandated by this Court in *Commonwealth v. Batts*, 163 A.3d 410 (Pa. 2017) ("*Batts II*"), first find permanent incorrigibility, irreparable corruption or irretrievable depravity beyond a reasonable doubt.

*Commonwealth v. Felder*, 2018 Pa. LEXIS 3067 (June 19, 2018).

appellant must preserve it in a post-sentence motion, file a timely notice of appeal, include in his brief a Pa.R.A.P. 2119(f) statement, and present a substantial question for review. *See Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010).

Elliott timely filed his appeal and preserved his claim in his post-sentence motion. However, the Commonwealth objects to the form of Elliott's Rule 2119(f) statement. We disagree with the Commonwealth's position. Although Elliott's Rule 2119(f) statement commingles challenges to the legality and the discretionary aspects of sentencing, his statement does provide reasons in support of allowance of appeal with respect to the discretionary aspects of his sentence. *See* Elliott's Brief at 5-8 ("Statement of Reasons to Allow an Appeal to Challenge the Discretionary Aspects of a Sentence"). We therefore conclude that Elliott substantially complied with Rule 2119(f), and now turn to consider whether Elliott has presented a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa .Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing

process." ***Id.*** (internal citations omitted). In his Rule 2119(f) statement,

Elliott contends:

> The sentencing court violated Section 9721(b) of the Sentencing Code[10] by not carefully considering the relevant factor of Mr. Elliott's rehabilitative needs and balancing those with the protection of the public and the gravity of the offense. Rather, the sentencing court relied on the impact on the victim's family and the fact that Mr. Elliott was 17 years of age. … The sentencing judge failed to consider any rehabilitative needs of [Elliott].
>
> … For these reasons, the sentence imposed was excessive and an abuse of discretion.

Elliott's Brief at 7-8 (Rule 2119(f) statement). We find this claim does present

a substantial question that warrants review. ***See Commonwealth v.***

***Caldwell***, 117 A.3d 763, 769-770 (Pa. Super. 2015) (*en banc*) (holding an

excessive sentence claim — in conjunction with an assertion that the court

failed to consider mitigating factors — raises a substantial question).

> In reviewing a challenge to the discretionary aspects of sentencing,
>
> the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. … [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless "the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." … "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality,

---

[10] Section 9721(b) provides in relevant part: "[T]he court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b).

prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous."

***Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (citations omitted).

Elliott contends he has proven he has been rehabilitated, and the trial judge improperly used his age and his IQ as aggravating rather than mitigating factors. In this regard, we note the trial court found Elliott was "just about three and one half months short of being 18 years of age [at the time of the murder, s]o I think that goes against you," and had an above average IQ. N.T., 7/12/2017, at 44. Elliott argues, "Under ***Miller*** and ***Montgomery***[,] it is clearly irrelevant that the Defendant was nearly 18 years of age." Elliott's Brief at 11.

Here, the record reflects that, consistent with ***Batts II***, the trial court considered as guidance the factors enumerated in Section 1102.1(d).[11, 12]

---

[11] ***See*** Footnote 6, ***supra***.

[12] Section 1102.1(d) provides:

> (d) Findings*. —* In determining whether to impose a sentence of life without parole under subsection (a), the court shall consider and make findings on the record regarding the following:
>
> > (1) The impact of the offense on each victim, including oral and written victim impact statements made or submitted by family members of the victim detailing the physical, psychological and economic effects of the crime on the victim and the victim's family. A victim impact statement may include comment on the sentence of the defendant.
> >
> > (2) The impact of the offense on the community.

*See* Trial Court Opinion, 11/8/2017, at 6; N.T., 7/12/2017, at 38-47. It is the trial court's prerogative to weigh such sentencing factors as it believes appropriate, and this Court may not "reweigh the reasons offered by the sentencing court." **Walls, supra**, 926 A.2d at 966.

Furthermore, where, as here, the trial court has the benefit of a pre-sentence report, we presume that the court was aware of relevant information regarding the defendant's character and weighed those considerations along

---

(3) The threat to the safety of the public or any individual posed by the defendant.

(4) The nature and circumstances of the offense committed by the defendant.

(5) The degree of the defendant's culpability.

(6) Guidelines for sentencing and resentencing adopted by the Pennsylvania Commission on Sentencing.

(7) Age-related characteristics of the defendant, including:

(i) Age.

(ii) Mental capacity.

(iii) Maturity.

(iv) The degree of criminal sophistication exhibited by the defendant.

(v) The nature and extent of any prior delinquent or criminal history, including the success or failure of any previous attempts by the court to rehabilitate the defendant.

(vi) Probation or institutional reports.

(vii) Other relevant factors.

18 Pa.C.S. § 1102.1(d).

with any mitigating factors. ***Commonwealth v. Seagraves***, 103 A.3d 839, 842 (Pa. Super. 2014), *citing* ***Commonwealth v. Griffin***, 65 A.3d 932, 937 (Pa. Super. 2013). The trial court also had access to an extensive sentencing memorandum provided by Elliott that detailed mitigating factors, including rehabilitation.

Finally, the trial court explicitly recognized his obligation to "take into account how children are different and how their differences counsel against irrevocably sentencing them to a lifetime in prison," and determined a 50-year minimum sentence was appropriate. N.T., 7/12/2017, at 39. In so doing, the court considered the Section 1102.1(d) factors, specifically: (1) *the impact on the victim*, finding "that this greatly affected the family of the victim and it has long lasting effects," *id.* at 40, (2) *the impact to the community*, finding that "for approximately two years it was unclear who had committed the offenses," *id.*, (3) *the threat of public safety*, finding there was no threat to anybody else at the time and Elliott would not be a threat if he were released from prison — "[B]ased on … reports from the institution, [Elliott's] chance of recidivism is very, very little," *id.* at 41, (4*) the nature and circumstances of the offense*, finding Elliott entered the victim's home to commit a robbery and there was not "a lot of sophistication" as Elliott panicked and killed the victim, and Elliott's efforts to try to cover up the murder with a fire showed "a juvenile mind" and an "immature effort," *id.* at 42-43, (5) *the degree of culpability*, finding there was no one else to blame except Elliott, (6) *the guidelines for*

*sentencing*, finding the trial court was allowed to set a minimum sentence under the circumstances, (7) *age*, finding the fact Elliott was just three and one-half months shy of 18 at the time of the incident weighed against him to determine an appropriate minimum, (8) *mental capacity*, finding Elliott had an above average IQ and "good mental capacity," *id.* at 44, (9) *maturity*, finding maturity was hard to judge, but Elliott was able to rise in the military to the level of corporal prior to his arrest,[13] (10) *the degree of criminal sophistication*, finding Elliott's crime was not "a particularly sophisticated crime", *id.* at 45, (11) *prior criminal history*, finding there was none, (12) *probation or institutional reports*, finding the institutional reports over the 40-plus years Elliott has been incarcerated described Elliott as "average or above average with the exception of one misconduct," *id.*, and (13) *other relevant factors*, finding remorse is not a relevant factor against Elliott. *See id.* at 41-46.

The trial court also considered "family and home environment," and found Elliott's home environment was "good" and "[t]here's no indication … there was anything bad in [Elliott's] home that would have caused [him] to go down the path [he] did with drinking and drugs and ultimately committing the burglary and attempted theft that led to the murder[, and t]here was no other pressure for [Elliott] to do this …." *Id.* at 46-47. Accordingly, on this

---

[13] Elliott was not arrested until two years after the incident.

record, which reflects the trial court properly considered the all relevant sentencing factors, including the factors listed in 18 Pa.C.S. § 1102.1(d) and Section 9721(b), there is no basis upon which to disturb the trial court's decision.

Finally, Elliott contends "[t]he sentencing guidelines are unconstitutional under the Constitutions of … the United States and the Commonwealth." Concise Statement, 12/7/2017. The entirety of this argument is one sentence:

> The sentencing guidelines are unconstitutional: (1) as they do not meet **Miller's** individualized sentencing requirements; (2) they do not allow a Judge to give proper weight to rehabilitation; (3) they focus on previous offenses rather than the **Miller** factors; and (4) they do not focus on the possibility of rehabilitation.

Elliott's Brief at 11.

We are unclear as to the nature of Elliott's argument since he cites no constitutional provisions and provides no analysis. Therefore, we simply point out that the trial court properly followed the guidance of Section 1102.1 for this pre-**Miller** defendant, as **Batts II** instructs, and that this Court has rejected a post-**Miller** defendant's federal constitutional challenge to Section 1102.1 based upon the Cruel and Unusual Punishment Clause of the Eighth Amendment. **See Commonwealth v. Brooker**, 103 A.3d 325, 338 (Pa. Super. 2014) (quotations omitted). **See also Commonwealth v. Lawrence**, 99 A.3d 116 (Pa. Super. 2014).

- 15 -

To the extent that this claim is arguably a challenge to the discretionary aspects of sentencing, specifically, the trial court's failure to consider the *Miller* factors, we find no merit in this argument since the trial court did, in fact, consider those factors, including the possibility of rehabilitation.

With regard to the *Miller* factors, our Supreme Court explained:

[T]he *Miller* Court concluded that sentencing for juveniles must be individualized. *See id.* at 474-78. This requires consideration of the defendant's age at the time of the offense, as well as "its hallmark features," including:

immaturity, impetuosity, and failure to appreciate risks and consequences[;] ... the family and home environment that surrounds him — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional[;] ... the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him[;] ... that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys[;] ... [and] the possibility of rehabilitation ... when the circumstances [(the youthfulness of the offender)] most suggest it.

*Id.* at 477-78. *See also id.* at 476 (stating that in addition to age, a court must also give consideration to a juvenile offender's "background and mental and emotional development ... in assessing his culpability") (quoting *Eddings*, 455 U.S. at 116).

*Commonwealth v. Batts*, 163 A.3d 410, 431-432 (Pa. 2017).

As discussed above, the trial court specifically considered Elliott's juvenile mind and immaturity, his family and home environment, the circumstances of the murder, including the extent of his participation and peer pressure, and the possibility of rehabilitation in light of positive institutional

reports. As such, the trial court took into account the ***Miller*** factors, and weighed these factors as it was entitled to do.

In conclusion, we find the arguments presented by Elliott provide no basis upon which to disturb the 50 years to life sentence imposed by the trial court upon resentencing. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2018

- 17 -