J-S16020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :          PENNSYLVANIA
                                 :
          v.                     :
                                 :
                                 :
                                 :
RAYMARR DAQUAN ALFORD            :
                                 :
          Appellant              :     No. 1626 MDA 2018

Appeal from the PCRA Order Entered September 20, 2018
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001969-2012

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 09, 2019**

Raymarr Daquan Alford (Appellant) appeals from the order dismissing his timely petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

On July 9, 2012, just five days shy of his 18th birthday, Appellant shot and killed Kevan Connelly at Flanagan Park in Williamsport, Pennsylvania. Appellant was charged with murder and related crimes, and on April 30, 2014, a jury convicted him of first-degree murder, criminal conspiracy, possessing an instrument of crime, recklessly endangering another person (REAP), and firearms not to be carried without a license.  On November 10, 2014, the trial court sentenced Appellant, pursuant to 18 Pa.C.S.A. § 1102.1(a)(1) (Sentence of persons under the age of 18 for murder), to 50 years to life imprisonment. On his remaining convictions, the trial court sentenced Appellant to consecutive terms of 9½ to 40 years for criminal conspiracy, 1 to 2 years for

REAP, and 2 to 7 years for firearms not to be carried without a license. Appellant's aggregate sentence was 62½ years to life imprisonment.

On December 16, 2015, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Alford*, 475 MDA 2015 (Pa. Super. Dec. 16, 2015) (unpublished memorandum). On August 3, 2016, the Supreme Court of Pennsylvania denied Appellant's petition for allowance of appeal.

On June 13, 2017, Appellant filed a timely *pro se* PCRA petition. On August 30, 2017, the PCRA court appointed counsel to represent Appellant during PCRA proceedings. In his petition, Appellant asserted that his trial counsel was ineffective for failing to file a decertification petition to transfer his case for disposition in juvenile court, and his sentence was illegal because his 50-year to life sentence for first-degree murder was an unconstitutional *de facto* life sentence.

On August 27, 2018, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition pursuant to Pennsylvania Rule of Criminal Procedure 907. On September 20, 2018, the PCRA court formally dismissed Appellant's PCRA petition. This timely appeal followed. On October 1, 2018, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On October 8, 2018, Appellant filed a timely Rule 1925(b) statement.

Appellant presents the following issues for our review:

1. Whether trial counsel was ineffective for failing to file a decertification motion that, if successful, would have transferred his case to the juvenile court system.

2. Whether Appellant received a *de facto* sentence of life imprisonment without the possibility of parole in violation of the Eighth Amendment of the United States Constitution when he received a sentence of 50 years for a homicide offense committed as a juvenile.

Appellant's Brief at 6.

We review the denial of PCRA relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

Appellant's first issue challenges the effectiveness of trial counsel. In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. *Commonwealth v. Bomar*, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption, the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). To demonstrate prejudice in an ineffective assistance of counsel claim, "the

petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Commonwealth v. King***, 57 A.3d 607, 613 (Pa. 2012). If the petitioner fails to prove any of these prongs, the claim is subject to dismissal. ***Bomar***, 104 A.3d at 1188.

Appellant argues that trial counsel was ineffective for failing to file a decertification motion to transfer his case to juvenile court. Appellant maintains that, based on his difficult upbringing and mental health issues, he is amenable to treatment, supervision and rehabilitation as a juvenile, and that consequently, the trial court would have granted the decertification motion.

The PCRA court, who also sat as the trial court, rejected this claim, explaining:

> When deciding whether to transfer a criminal case to juvenile court, there are several factors that must be considered. As noted, "[u]nder the current statutory framework, a juvenile who commits first or second-degree murder must be charged as an adult. A Petitioner can then request that his or her case be transferred to the Juvenile Division[.]" ***Commonwealth v. Foust***, 180 A.3d 416, 428 (Pa. Super. 2018). Petitioner has the burden of proof and must show that transferring his first-degree murder case would serve the public interest. In determining whether such a transfer serves the public interest, 42 Pa.C.S. § 6355 provides the following factors for a court to evaluate:
>
> (A) the impact of the offense on the victim or victims;
>
> (B) the impact of the offense on the community;
>
> (C) the threat to the safety of the public or any individual posed by the child;

(D) the nature and circumstances of the offense allegedly committed by the child;

(E) the degree of the child's culpability;

(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal, justice system; and

(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile [. . .]

In this case, the impact on the victim and community is severe. [Appellant] murdered the victim in front of the victim's younger brother, and the grief and suffering of the victim's family is immeasurable. Furthermore, [Appellant]'s actions have created tension and unease within the community. This brazen shooting of the victim in a popular public park has made local residents fear for their own safety and that of their children. Given the level of sophistication and planning involved as well as the violent and deadly nature of [Appellant]'s offenses, this [c]ourt does not believe [Appellant] could prove that the transfer would have served the public interest. Although [Appellant] may be amenable to treatment, the gravity of the other factors outweighs this consideration. This [c]ourt would not have approved the transfer of this case to juvenile court. Therefore, this [c]ourt cannot find that [Appellant] has established that [trial counsel] was ineffective merely because he did not file the decertification motion, since that Motion would have most likely been unsuccessful. "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" **Commonwealth v. Williams**, 899 A.2d 1060, 1064 (Pa. 2006) (quoting **Commonwealth v. Howard**, 719 A.2d 233, 237 (Pa. 1998)). Since there was no guarantee of success had trial counsel filed a decertification petition, this issue has no merit.

PCRA Court Opinion, 8/27/18, at 3-4.

Based upon our review of the record and applicable authority, we agree with the PCRA court's disposition of this issue. As the PCRA court recognizes,

whether a defendant is amenable to treatment, supervision or rehabilitation as a juvenile is but one consideration when a court determines whether it will transfer a case to juvenile court. *See id.* (citing 42 Pa.C.S.A. § 6355).[1]

In this case, the PCRA court referenced the other statutory factors, such as the impact of the offense on the victim, the impact of the offense on the community, the threat to the safety of the public posed by Appellant, the nature and circumstances of the offense committed, and the degree of Appellant's culpability. The PCRA court determined that given the horrific nature of the crime, it would not have transferred Appellant's case to juvenile court had trial counsel filed a motion for decertification. *Id.* Accordingly, we conclude that the PCRA court did not err in dismissing Appellant's ineffective assistance of counsel claim, as trial counsel cannot be ineffective for failing to request relief that the trial court would not have granted. *See Commonwealth v. Sneed*, 45 A.3d 1096, 1115 (Pa. 2012) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.").

---

[1] Although 42 Pa.C.S.A. § 6355 applies to transfer **to** criminal proceedings from juvenile court, and 42 Pa.C.S.A. § 6322 prescribes transfer **from** criminal proceedings to juvenile court, Section 6322 instructs, "In determining whether the child has so established that the transfer [to juvenile court] will serve the public interest, the court shall consider the factors contained in section 6355(a)(4)(iii) (relating to transfer to criminal proceedings)." 42 Pa.C.S.A. § 6322.

In his second issue, Appellant challenges the legality of his sentence. Appellant argues that the PCRA court erred in dismissing his claim that his 50-year sentence for first-degree murder was unconstitutional and created a *de facto* life sentence. Appellant emphasizes that he will be approximately 80 years old after he completes his minimum aggregate sentence of 62½ years.

We have previously summarized the applicable authority:

> In **Miller**, the Supreme Court of the United States held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing. Subsequently, in **Montgomery**, the Court held that the **Miller** decision announced a substantive rule of constitutional law that applies retroactively.

**Commonwealth v. Bebout**, 186 A.3d 462, 472 n.1 (Pa. Super. 2018) (citations omitted).

Section 1102.1, which the General Assembly enacted in the wake of the **Miller** decision, prescribes sentencing for those who commit first-degree murder while under the age of 18:

> **(a) First degree murder.--**A person who has been convicted after June 24, 2012, of a murder of the first degree, first degree murder of an unborn child or murder of a law enforcement officer of the first degree and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.

18 Pa.C.S.A. § 1102.1(a)(1).

In **Commonwealth v. Foust**, 180 A.3d 416 (Pa. Super. 2018), we held that "a trial court may not impose a term-of-years sentence, which constitutes a *de-facto* [life-without-parole] sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he or she is incapable of rehabilitation." **Id.** at 431. However, we "explicitly decline[d] to draw a bright line . . . delineating what constitutes a *de facto* [life without parole] sentence and what constitutes a constitutional term-of-years sentence." **Id.** at 438. Similarly, we "decline[d] to set forth factors that trial courts must consider when making this determination." **Id.** We further explained:

> There are certain term-of-years sentences which clearly constitute *de facto* [life without parole] sentences. For example, a 150-year [minimum] sentence is a *de facto* [life without parole] sentence. Similarly, there are clearly sentences which do not constitute *de facto* [life without parole] sentences. A sentence of 30 years to life falls into this category. We are unaware of any court that has found that a sentence of 30 years to life imprisonment constitutes a *de facto* [life without parole] sentence for a juvenile offender. Even the study with the shortest life expectancy for an offender in [the a]ppellant's position places his life expectancy at 49 years, *i.e.*, beyond 30 years.

**Id.**

Including **Foust**, there have been numerous published opinions of this Court analyzing whether a sentence fashioned by a trial court amounted to a *de facto* life without parole sentence for a juvenile offender. **See, e.g., Foust**, 180 A.3d at 438 (holding that a sentence of 30 years to life did not constitute a *de facto* life sentence, where the defendant was charged with two counts of

first-degree murder and received consecutive, 30-year-to-life sentences at each conviction); ***Bebout***, 186 A.3d at 469-70 (holding that a sentence of 45 years to life did not constitute a *de facto* life without parole sentence); ***Commonwealth v. White***, 193 A.3d 977, 986 (Pa. Super. 2018) (holding a sentence of 35 years to life did not constitute a *de facto* life without parole sentence); ***see also Commonwealth v. Elliott***, 1769 WDA 2017, 2018 WL 3764983 at *4 (Pa. Super. Aug. 9, 2018) (unpublished memorandum)[2] (holding that a 50-year to life sentence was not a *de facto* life sentence where the juvenile offender would be eligible for parole at age 70 and thus possessed a "meaningful possibility of parole").

Instantly, Appellant contends that we should consider the entirety of his sentence (62½ years to life) in determining whether he received a *de facto* life without parole sentence. Appellant's Brief at 36-38. In ***Foust***, however, we held that "when considering the constitutionality of a sentence, the **individual** sentences must be considered when determining if a juvenile received a *de facto* [life without parole] sentence." ***Foust***, 180 A.3d at 434 (emphasis added). Consequently, we must analyze Appellant's 50-year sentence for first-degree murder separately from the sentences he received for his other convictions.

---

[2] As an unpublished decision, we cite ***Elliott*** for its persuasive value.

The trial court sentenced Appellant to a minimum term of 50 years of incarceration for his first-degree murder conviction. According to the sentencing order, Appellant's sentence began to run on September 20, 2012, when Appellant was 18 years and 2 months of age. **See** Sentencing Order, 11/10/14. Thus, the minimum tail of Appellant's 50-year sentence for his first-degree murder conviction will conclude when he is 68 years old. We acknowledge that because of his aggregate sentence, Appellant will still be serving time for his other convictions. Nevertheless, he may obtain parole. Based on our review of the record and the applicable law, we cannot conclude that Appellant's 50-year to life sentence for his first-degree murder conviction constitutes a *de facto* life without parole sentence. Accordingly, Appellant's second issue does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2019