J-S15035-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :             PENNSYLVANIA
                  Appellee         :
                                             :
                    v.               :
                                             :
SCOTT FONTAINE WALKER         :
                                           :
                  Appellant        :            No. 1216 WDA 2018

Appeal from the Judgment of Sentence Entered April 26, 2018
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009861-1994

BEFORE: GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY GANTMAN, P.J.E.:                **FILED JUNE 04, 2019**

Appellant, Scott Fontaine Walker, appeals from the new judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury trial conviction for first-degree murder.[1] We affirm and grant counsel's petition to withdraw.

The relevant facts and procedural history of this case are as follows. On July 24, 1994, Appellant fatally shot Victim. Appellant was 15 years old at the time. A jury convicted Appellant of first-degree murder on May 11, 1995. The court sentenced Appellant on June 26, 1995, to life imprisonment without the possibility of parole ("LWOP"). This Court affirmed the judgment of sentence on June 4, 1996, and our Supreme Court denied allowance of appeal on

_____

[1] 18 Pa.C.S.A. § 2501(a).

_____

\*   Retired Senior Judge assigned to the Superior Court.

October 22, 1996. *See Commonwealth v. Walker*, 683 A.2d 315 (Pa.Super. 1996) (unpublished memorandum), *appeal denied*, 546 Pa. 665, 685 A.2d 545 (1996). Subsequently, Appellant unsuccessfully litigated four PCRA petitions between 2000 and 2010.

On July 6, 2012, Appellant filed *pro se* his fifth PCRA petition, requesting relief under *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). The PCRA court appointed PCRA counsel on October 19, 2012. The PCRA court issued notice on March 11, 2014, of its intent to dismiss Appellant's petition without a hearing per Pa.R.Crim.P. 907; Appellant filed a response on April 10, 2014. On January 27, 2015, the PCRA court dismissed Appellant's petition, and Appellant timely appealed. On March 1, 2016, this Court vacated the PCRA order and the judgment of sentence, and remanded for resentencing pursuant to *Miller* and *Montgomery v. Louisiana*, ___ U.S. ___, 136 S.Ct. 718, 191 L.Ed.2d 599 (2016). *See Commonwealth v. Walker*, 144 A.3d 185 (Pa.Super. 2016) (unpublished memorandum).

Upon remand, the court resentenced Appellant on April 26, 2018, to thirty-five (35) years to life imprisonment. On May 7, 2018, Appellant timely filed a post-sentence motion, which the court denied on August 2, 2018. On August 27, 2018, Appellant timely filed a notice of appeal. The court ordered Appellant on September 5, 2018, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Following an extension,

counsel filed a Pa.R.A.P. 1925(c)(4) statement of intent to file an **Anders**[2] brief on November 8, 2018. Counsel filed a petition for leave to withdraw as counsel and an **Anders** brief in this Court on January 30, 2019.

As a preliminary matter, counsel seeks to withdraw his representation pursuant to **Anders, supra** and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007). After confirming that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous. **Commonwealth v. Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006). **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing

---

[2] **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor [**Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> * * *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360. Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, Appellant's counsel has filed a petition to withdraw. The petition states counsel conducted a conscientious review of the record and determined the appeal is wholly frivolous. Counsel also supplied Appellant with a copy of the brief and a letter explaining Appellant's right to retain new counsel or to proceed *pro se* to raise any additional issues Appellant deems

- 4 -

worthy of this Court's attention. In the **Anders** brief, counsel provides a summary of the facts and procedural history of the case. Counsel's argument refers to relevant law that might possibly support Appellant's issues. Counsel further states the reasons for the conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the technical requirements of **Anders** and **Santiago**.

Appellant has not responded to the **Anders** brief *pro se* or with newly-retained private counsel. Counsel raises the following issue on Appellant's behalf:

> WHETHER THE TRIAL COURT IMPOSED AN ILLEGAL SENTENCE OF THIRTY-FIVE (35) YEARS TO LIFE IMPRISONMENT FOR FIRST-DEGREE MURDER WHEN THE SENTENCE WAS AN UNLAWFUL *DE FACTO* LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROLE?

(**Anders** Brief at 4).

Appellant argues his sentence of thirty-five years to life imprisonment constitutes a *de facto* LWOP sentence. Appellant concludes his sentence is illegal under **Miller**. We disagree.

A claim that a court sentenced a juvenile defendant to a *de facto* LWOP sentence goes to the legality of the sentence. **Commonwealth v. Foust**, 180 A.3d 416, 422 (Pa.Super. 2018). A challenge to the legality of a sentence is a question of law. **Commonwealth v. Barnes**, 167 A.3d 110, 116 (Pa.Super. 2017) (*en banc*). Thus, our standard of review is de novo and our scope of review is plenary. **Id.**

In 2012, the United States Supreme Court held LWOP sentences for those under 18 years old at the time of their crimes constitute cruel and unusual punishments in violation of the Eighth Amendment to the United States Constitution. ***Miller, supra***. In the wake of ***Miller***, the Pennsylvania General Assembly enacted 18 Pa.C.S.A. § 1102.1, which provides in relevant part as follows:

> **§ 1102.1. Sentence of persons under the age of 18 for murder, murder of an unborn child and murder of a law enforcement officer**
>
> **(a) First degree murder.**—A person who has been convicted **after** June 24, 2012, of a murder of the first degree…and who was under the age of 18 at the time of the commission of the offense shall be sentenced as follows:
>
> > (1) A person who at the time of the commission of the offense was 15 years of age or older shall be sentenced to a term of life imprisonment without parole, or a term of imprisonment, the minimum of which shall be at least 35 years to life.
>
> > \* \* \*
>
> **(e) Minimum sentence.**—Nothing under this section shall prevent the sentencing court from imposing a minimum sentence greater than that provided in this section. Sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing may not supersede the mandatory minimum sentences provided under this section.
>
> > \* \* \*

18 Pa.C.S.A. § 1102.1(a)(1), (e) (emphasis added). "Section 1102.1 does not prescribe minimum sentences for juvenile homicide defendants who…were convicted of first or second-degree murder **before** June 24, 2012." ***Foust,***

*supra* at 428 (emphasis added). Juvenile offenders convicted of first-degree murder prior to *Miller*, however, are subject to a minimum term-of-years sentence, which the sentencing court may determine, and a mandatory maximum life imprisonment sentence. *Commonwealth v. Batts*, 640 Pa. 401, 450-51, 163 A.3d 410, 439 (2017) ("*Batts II*") (holding rebuttable presumption exists against sentencing juveniles to LWOP, which Commonwealth can rebut if it proves beyond reasonable doubt that juvenile defendant cannot be rehabilitated).

In *Foust*, this Court held "a trial court may not impose a term-of-years sentence, which constitutes a *de facto* LWOP sentence, on a juvenile offender convicted of homicide unless it finds, beyond a reasonable doubt, that he…is incapable of rehabilitation." *Foust, supra* at 431. This Court noted "[t]here are certain term-of-years sentences which clearly constitute *de facto* LWOP sentences. For example, a 150-year sentence is a *de facto* LWOP sentence. Similarly, there are clearly sentences which do not constitute *de facto* LWOP sentences. A sentence of 30 years to life falls into this category." *Id.* at 438. The *Foust* Court, however,

> decline[d] to draw a bright line…delineating what constitutes a *de facto* LWOP sentence and what constitutes a constitutional term-of-years sentence. ***But see Commonwealth v. Dodge***, 77 A.3d 1263, 1276 (Pa.Super. 2013), *appeal denied*, 625 Pa. 648, 91 A.3d 161 (2013) (appearing to hold that…defendant must be parole eligible before he…turns 90 for it not to be considered…*de facto* LWOP sentence). We similarly decline[d] to set forth factors that trial courts must consider when making this determination, *i.e.*, whether they must look to the life

expectancy of the population as a whole or a subset thereof and whether the defendant must be given a chance at a meaningful post-release life.

*Id.* at 438.

In applying *Foust*, this Court has outlined a method to determine whether a sentence constitutes a *de facto* LWOP sentence:

> The key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits. Thus, though it expressly declined to do so, the *Foust* Court seemed to suggest some sort of meaningful-opportunity-for-release standard by declaring that a 150–years–to–life sentence constitutes a *de facto* LWOP sentence.

*Commonwealth v. Bebout*, 186 A.3d 462, 467 (Pa.Super. 2018) (internal quotations marks and citations omitted) (concluding sentence of 45 years to life imprisonment did not constitute *de facto* LWOP sentence in violation of *Miller*, where appellant had been incarcerated for underlying offense since he was 15 years old and will be eligible for parole at age 60). *See also Commonwealth v. Blount*; ___ A.3d ___, 2019 PA Super 108 (filed April 4, 2019) (deciding sentence of 35 years to life imprisonment was not illegal *de facto* LWOP sentence; noting appellant was incarcerated for related offense at age 17 and will be eligible for parole at age 52); *Commonwealth v. White*,

193 A.3d 977 (Pa.Super. 2018) (holding sentence of 35 years to life imprisonment imposed upon was not illegal *de facto* LWOP sentence; explaining appellant had been incarcerated for underlying crime since he was 17 years old and will be eligible for parole at age 52).

Instantly, the resentencing court sentenced Appellant to thirty-five years to life imprisonment. Appellant has been incarcerated since he was 15 years old and will be eligible for parole when he is 50 years old. Therefore, Appellant's sentence does not constitute a *de facto* LWOP sentence and is not an illegal sentence per **Miller**. **See Blount, supra**; **White, supra**; **Bebout, supra**. Following our independent review of the record, we conclude the appeal is wholly frivolous. **See Dempster, supra**; **Palm, supra**. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed; counsel's petition to withdraw is granted.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/4/2019