J-S61036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL SERRANO, III | : | |
| | : | |
| Appellant | : | No. 1362 EDA 2019 |

Appeal from the Judgment of Sentence Entered December 19, 2018
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0001487-2007

BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED DECEMBER 13, 2019**

Appellant, Paul Serrano, III, appeals from the December 19, 2018, judgment of sentence entered in the Court of Common Pleas of Northampton County following the lower court's grant of PCRA[1] relief and resentencing of Appellant on his conviction for first-degree murder pursuant to ***Montgomery v. Louisiana***, ___ U.S. ___, 136 S.Ct. 718 (2016), which held that state courts are required to grant retroactive effect to new substantive rules of federal constitutional law, such as ***Miller v. Alabama***, 567 U.S. 460, 132 S.Ct. 2455 (2012).  ***Miller*** held unconstitutional mandatory sentences of life imprisonment without the possibility of parole for offenders, like Appellant,

_____

[*] Former Justice specially assigned to the Superior Court.
[1] Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

who were under eighteen years of age at the time of their crimes. After a careful review, we affirm.

The procedural history in this case is convoluted and lengthy. We provide a brief summary of the procedural history, which is relevant for purposes of this appeal.

In 2007, the Commonwealth charged Appellant with the murder of Kevin Muzila. At the time Appellant was arrested and charged, he was eighteen years old; however, Appellant was seventeen years old at the time he committed the murder. The Commonwealth mistakenly charged Appellant as an adult and gave notice of its intent to seek the death penalty.

On August 14, 2007, Appellant pled guilty to first-degree murder in exchange for the Commonwealth's promise to waive its right to purse the now-illegal death penalty. *See Roper v. Simmons*, 543 U.S. 551, 115 S.Ct. 1183 (2005) (declaring that sentencing a juvenile offender to death violates the Constitution's prohibition of cruel and unusual punishments). As a result, Appellant, who was a juvenile when he committed the murder, was sentenced to life without the possibility of parole.

Thereafter, Appellant filed serial PCRA petitions, culminating in the latest one, which Appellant filed with the assistance of counsel on September 17, 2018. Therein, Appellant complained his sentence was illegal under *Montgomery*, *supra*, and *Miller*, *supra*. Appellant recognized his PCRA petition was facially untimely; however, he invoked the governmental

interference exception under 42 Pa.C.S.A. § 9545(b)(1)(i). By order entered on October 9, 2018, the PCRA court granted Appellant's PCRA petition, vacated the 2007 judgment of sentence, and scheduled a new sentencing hearing.[2]

---

[2] On February 21, 2017, the PCRA court purported to vacate Appellant's 2007 judgment of sentence and resentence Appellant to 35 years to life in prison. However, on appeal, this Court held the PCRA court was without jurisdiction to grant Appellant collateral relief since Appellant did not plead any of the timeliness exceptions. **Commonwealth v. Serrano**, No. 1080 EDA 2017 (Pa.Super. filed 11/1/17) (unpublished memorandum). Consequently, we held the 2017 judgment of sentence was a legal nullity, and Appellant's 2007 judgment of sentence remained in effect. **Id.** We noted Appellant's amended PCRA petition remained pending and counsel could amend it further to plead appropriate timeliness exceptions. **Id.**

Thereafter, Appellant amended his PCRA petition and, citing to **Montgomery** and **Miller**, he pled the newly-recognized constitutional right exception set forth in Section 9545(b)(1)(iii). On December 29, 2017, the PCRA court found the petition met the timeliness exception. However, in addressing the merits, the PCRA court failed to recognize this Court had nullified the 2017 judgment of sentence, and, instead, the PCRA court denied Appellant's PCRA petition on the basis the 2017 judgment of sentence was not unconstitutional. Within two weeks, on January 10, 2018, the PCRA court *sua sponte* entered a second order indicating that, upon further review, the original 2007 judgment of sentence remained in effect; however, the PCRA court did not consider the legality of the 2007 sentence in light of the issues presented in Appellant's amended PCRA petition.

Appellant appealed to this Court and, during the pendency of the appeal, on April 20, 2018, the PCRA court entered a "Memorandum Opinion" granting Appellant PCRA relief and indicating he should be resentenced. Relying upon the "Memorandum Opinion," Appellant discontinued his appeal, and the case was reassigned to a new PCRA court judge, who concluded that there were no PCRA petitions pending before the lower court. However, noting the procedural history was a "cluster" of errors, the PCRA court judge held it was unclear whether the "Memorandum Opinion" was a Pa.R.A.P. 1925(a) opinion or a proper order, and, thus, Appellant may have been misled into discontinuing his appeal. PCRA Court Opinion, filed 9/10/18. The PCRA court urged Appellant to file a PCRA petition presenting a new theory of relief, and

On December 19, 2018, Appellant proceeded to a resentencing hearing, at the conclusion of which he was sentenced to forty-five years to life in prison for first-degree murder. He was awarded credit for all time served. Appellant filed a timely, counseled post-sentence motion, which the lower court denied on March 29, 2019. This timely, counseled appeal followed.

On appeal, Appellant presents the following sole issue in his "Statement of Questions Involved":

1. Whether the Trial Court erred when it imposed a term of years sentence which constitutes a de facto life without parole sentence on a juvenile offender convicted of homicide[?]

Appellant's Brief at 2 (suggested answer omitted).

Appellant avers the trial court's minimum sentence of forty-five years in prison, which includes credit for time served, constitutes an illegal *de facto* life sentence since it deprives Appellant of a meaningful opportunity for release.

---

therefore, Appellant filed a PCRA petition on September 17, 2018, averring governmental interference in the presentation of his legality of sentence claim. We conclude the PCRA court's January 10, 2018, order amounted to a reconsideration of its December 29, 2017, order; however, since the PCRA court did not fully address the merits of Appellant's amended PCRA petition within the January 10, 2018, order as it related to the constitutionality/legality of the original 2007 judgment of sentence, it did not constitute a final order. *See* Pa.R.A.P. 341; 42 Pa.C.S.A. § 5505. Consequently, Appellant's appeal from the January 10, 2018, order was premature. We find it unnecessary to determine whether the April 20, 2018, "Memorandum Opinion" was an order granting PCRA relief/ordering resentencing or whether it was an advisory Pa.R.A.P. 1925(a) opinion. In either event, there was a breakdown when the PCRA court later directed Appellant to file another PCRA petition instead of entering a final order as to the amended PCRA petition. However, as Appellant has been resentenced pursuant to the PCRA relief requested in his amended petition, we shall address the issue pertaining to his new sentence.

- 4 -

Citing to various websites, Appellant reasons that the trial court's sentence ignores his true life expectancy. That is, Appellant, who avers he will not be eligible for parole until he is sixty-two years old, contends that a prisoner's life expectancy is sixty-four years old, and thus, the trial court's minimum sentence is illegal. *See* Appellant's Brief at 9-11.

Appellant's claim presents a challenge to the legality of his sentence. "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Seskey*, 170 A.3d 1105, 1107 (Pa.Super. 2017) (citation omitted). Where a sentence is found to be illegal, it must be vacated. *Commonwealth v. Rivera*, 95 A.3d 913, 915 (Pa Super. 2014).

As this Court previously held in *Commonwealth v. Lekka*, 210 A.3d 343 (Pa.Super. 2019):

> This Court has rejected similar arguments in several recent cases in which a juvenile offender originally sentenced to life without parole was resentenced following *Miller* and *Montgomery*. *See* [*Commonwealth v.*] *White*, 193 A.3d [977 (Pa.Super. 2018)] (35-years-to-life sentence with earliest opportunity for parole at age 52); *Commonwealth v. Bebout*, 186 A.3d 462, 469-70 (Pa.Super. 2018) (45-years-to-life sentence with earliest opportunity for parole at age 60); *Commonwealth v. Foust*, 180 A.3d 416, 438 (Pa.Super. 2018) (two consecutive 30-years-to-life sentences). In *Foust*, following an extensive review of *Miller*, *Montgomery*, and the precedent on which they rely, we held that "a trial court may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* [life-without-parole] sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation." [*Foust*,] 180 A.3d at 433. We concluded that the two consecutive sentences of 30 years to life imprisonment that were imposed on the defendant in *Foust*

for two first-degree murder charges must be examined separately and that viewed as such each 30 year sentence was not an unconstitutional *de facto* life sentence. **Id.** at 434-38. While noting that there are certain terms-of-years sentences which are clearly constitutional and others that are clearly not, we "explicitly decline[d] to draw a bright line...delineating what constitutes a *de facto* [life-without-parole] sentence and what constitutes a constitutional term-of-years sentence." **Id.** at 438.

Our decision in **Bebout** is especially relevant here. In that case, the defendant also received a 45-years-to-life sentence upon resentencing pursuant to **Miller** and **Montgomery**, albeit he was 15 years old at the time he began serving his sentence and would be eligible for parole at age 60. **Bebout**, 186 A.3d at 468. This Court concluded that, in determining whether a sentence is a *de facto* life sentence, "it must at least be *plausible* that one could survive to the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." **Id.** at 468 (emphasis in original). We rejected the defendant's argument based on statistical data regarding life expectancy as inconclusive, and observed that the data alone did not resolve the difficulty of devising a standard to determine when a term-of-years sentence crosses the threshold into being a *de facto* life sentence. **Id.** at 468-69. While we noted that the 45-years-to-life sentence "falls between the 'clearly' constitutional and unconstitutional parameters suggested by the **Foust** Court," we held that the defendant had failed to show that a sentence which authorized his release at age 60 was the functional equivalent of a life-without-parole sentence. **Id.** at 467, 469-70 (quoting **Foust**, 180 A.3d. at 438).

In light of our binding precedent, we conclude that [the] [a]ppellant has not demonstrated that he has no meaningful chance of survival until he completes his 45-year minimum sentence to enjoy his time at liberty at parole, should he be granted release. While [the] [a]ppellant will not be eligible for parole until age 62, two years longer than the defendant in **Bebout**, [the] [a]ppellant has not shown any significant difference between the ages at the earliest possible point of release that would distinguish his case from **Bebout**. Furthermore, though [the] [a]ppellant has cited statistical data concerning life expectancy and case law of other states, as in **Bebout**, we must conclude that [the] [a]ppellant has not offered a workable standard as to what types of terms-of-years sentences are the *de facto* equivalent of life-without-parole sentences.

*Lekka*, 210 A.3d at 357-58 (footnote omitted).

Similarly, in the case *sub judice*, Appellant has failed to demonstrate that he has no plausible chance of survival until his minimum release date. Accordingly, we decline to find Appellant's sentence constitutes a *de facto* life sentence, necessitating a finding by the sentencing court that Appellant is "incapable of rehabilitation."[3] *Foust*, 180 A.3d at 433.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/13/19

---

[3] We note that Appellant contemporaneously filed a Pa.R.A.P. 1925(b) statement when he filed his notice of appeal. In his Rule 1925(b) statement, he alleged solely the following: "The Trial Court erred when it imposed a term of years sentence, which constitutes a de facto life without parole sentence on a juvenile offender convicted of homicide." Appellant's Pa.R.A.P. 1925(b) statement, filed 4/24/19. Accordingly, to the extent Appellant now seeks to challenge the discretionary aspects of his sentence on appeal, the issue has been waived. *See Commonwealth v. Snyder*, 870 A.2d 336, 341 (Pa.Super. 2005) (finding issues waived for failing to raise them in a Rule 1925(b) statement filed contemporaneously with the notice of appeal).