J-A23036-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARLES E. CARLSON, III, | : | |
| | : | |
| Appellant | : | No. 1393 WDA 2018 |

Appeal from the Judgment of Sentence Entered June 19, 2018
in the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0002338-1999

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 27, 2019**

Charles E. Carlson, III ("Carlson"), appeals from the judgment of sentence imposed after he was resentenced pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012), and ***Montgomery v. Louisiana***, 136 S. Ct. 718 (2016).[1] We affirm.

In September 1999, 17-year-old Carlson threw a Molotov cocktail into the home of his former girlfriend. Two young children, a 3-year-old and a 3-

---

[1] The Supreme Court in ***Miller*** held that sentencing schemes that mandate life in prison without parole ("LWOP") sentences for defendants who committed their crimes while under the age of eighteen violate the Eighth Amendment's prohibition on "cruel and unusual punishments." ***Miller***, 567 U.S. at 465. In ***Montgomery***, the Supreme Court held that the ***Miller*** decision announced a new substantive rule of constitutional law that applies retroactively. ***Montgomery***, 136 S. Ct. at 736.

month-old, were killed in the fire, and other occupants of the home received burns. Following a jury trial, Carlson was convicted of two counts each of second-degree murder and arson, five counts each of aggravated assault and recklessly endangering another person, and one count of incendiary devices.[2] For his convictions of second-degree murder, the trial court sentenced Carlson to consecutive, mandatory terms of LWOP.[3] This Court affirmed Carlson's judgment of sentence on April 25, 2002.

Carlson filed his first *pro se* Petition pursuant to the Post Conviction Relief Act ("PCRA") on July 15, 2010, challenging the legality of his sentence following the United States Supreme Court's decision in **Graham v. Florida**, 560 U.S. 48, 82 (2011) (prohibiting a sentence of life in prison without the possibility of parole for juveniles convicted of non-homicide offenses). The PCRA court appointed Carlson counsel, who sought permission to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). After appropriate Notice pursuant to Pa.R.Crim.P. 907, the PCRA court permitted PCRA counsel to withdraw, and dismissed Carlson's Petition.

On August 17, 2012, Carlson filed his second *pro se* PCRA Petition, challenging the legality of his sentence following the Supreme Court's decision

---

[2] 18 Pa.C.S.A. §§ 2502(b), 3301(a)(1), 2702(a)(1), 2705, 7306.

[3] The sentences for the remaining convictions were imposed concurrently.

in *Miller*. The PCRA court appointed Carlson counsel, but deferred further action on Carlson's Petition pending the Pennsylvania Supreme Court's decision in *Commonwealth v. Cunningham*, 81 A.3d 1 (Pa. 2013). Following the issuance of the *Cunningham* decision, *see id.* at 11 (holding that *Miller* does not apply retroactively to juveniles whose judgments of sentence were final on the date of the *Miller* decision), the PCRA court issued Notice of its intention to dismiss Carlson's Petition without a hearing. Carlson filed a *pro se* Motion to Amend his Petition. The PCRA court denied Carlson's Motion to Amend, and dismissed his Petition.

On December 22, 2014, Carlson filed a *pro se* Petition to Reinstate his appellate rights, *nunc pro tunc*, which the PCRA court denied. Carlson filed a *pro se* appeal from the court's denial of his Petition to Reinstate, wherein he asserted that PCRA counsel had abandoned him. By an Order entered on June 24, 2015, this Court remanded the matter to the PCRA court, with instructions to determine whether Carlson was entitled to appointment of counsel.[4] The PCRA court appointed Carlson counsel. Carlson subsequently filed with both the PCRA court and this Court a *pro se* Motion for a *Grazier*[5] hearing, or in the alternative, for the appointment of new counsel, claiming that appointed

_____

[4] This Court's Order indicates that Carlson filed a *pro se* "Application for Appointment of Counsel" on June 17, 2015. However, this document is not included in the certified record.

[5] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988).

- 3 -

counsel had again failed to act on his behalf. On October 23, 2015, this Court issued an Order acknowledging that appointed counsel had failed to file a brief on Carlson's behalf, and remanding the matter to the PCRA court to determine whether counsel had abandoned Carlson. Following a hearing, the PCRA court determined that appointed counsel had not abandoned Carlson on appeal, and indicated that an appellate brief was forthcoming. On April 15, 2016, this Court reversed the PCRA court's Order dismissing Carlson's Petition, vacated his judgment of sentence, and remanded to the trial court for re-sentencing pursuant to **Miller** and **Montgomery**. **See Commonwealth v. Carlson**, 145 A.3d 783 (Pa. Super. 2016) (unpublished memorandum).

While the appeal as to his second PCRA Petition was pending, Carlson filed his third PCRA Petition on March 28, 2016,[6] claiming that he was entitled to retroactive application of **Miller** following the Supreme Court's decision in **Montgomery**. The PCRA court appointed Carlson counsel, who filed an Amended Petition on his behalf, indicating that this Court had already vacated Carlson's judgment of sentence.

---

[6] The certified record contains a *pro se* PCRA Petition and Amended Petition, as well as a counseled PCRA Petition and Amended Petition, each of which were entered on the docket on the same date. All four documents challenge Carlson's sentence following the **Montgomery** decision.

The trial court conducted a resentencing hearing on June 19, 2018.[7] The trial court thereafter resentenced Carlson to consecutive prison terms of 25 years to life for each of his second-degree murder convictions,[8] with credit for time served, and ordered Carlson to pay the costs of prosecution. Carlson filed a Post-Sentence Motion, which the trial court denied following a hearing. Carlson filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of errors complained of on appeal.[9]

On appeal, Carlson raises the following questions for our review:

I. Is a sentence of fifty years to life a *de facto* life sentence that could not be constitutionally imposed after the sentencing court specifically found that [] Carlson was capable of rehabilitation?

II. Must the aggregate sentence be considered in determining whether the sentence imposed is an unconstitutional *de facto* life sentence?

III. Did the sentencing court abuse its discretion in imposing consecutive rather than concurrent sentences for offenses arising

---

[7] The Honorable Robert C. Reed, who presided over Carlson's original sentencing, had retired prior to Carlson's resentencing hearing. However, the sentencing court reviewed the trial transcripts and evidence before resentencing Carlson. **See** N.T., 6/19/18, at 89-90.

[8] The Commonwealth did not seek an LWOP sentence.

[9] On December 6, 2018, Carlson filed an Application to Stay Briefing Schedule, citing the Pennsylvania Supreme Court's decision to grant allowance of appeal in **Commonwealth v. Felder**, 2017 WL 6505643 (Pa. Super. 2017), **appeal granted**, 187 A.3d 909 (Pa. 2018) (granting allowance of appeal to consider whether "a sentence of 50 years to life imposed upon a juvenile constitute[s] a *de facto* life sentence requiring the sentencing court … first find permanent incorrigibility, irreparable corruption or irretrievable depravity beyond a reasonable doubt"). This Court denied Carlson's Application on December 18, 2018.

from a single act[,] and in failing to treat [] Carlson as a juvenile offender?

Brief for Appellant at 4.

We will address Carlson's first two claims together. In his first claim, Carlson argues that his sentence is unconstitutional because the aggregate sentence constitutes a *de facto* LWOP sentence. *Id.* at 11. Carlson points out that the trial court determined during the resentencing hearing that he is capable of rehabilitation. *Id.* at 12. Carlson argues that because he will not be eligible for parole until he is 67 years old, the sentence fails to provide him with a meaningful opportunity for release. *Id.*

Carlson next asserts that, in determining whether a sentence constitutes a *de facto* LWOP sentence, a court should consider the aggregate sentence imposed, rather than individual sentences ordered to run consecutively. *Id.* at 15-18.

Carlson's claims challenge the legality of his sentence. "When reviewing challenges to the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Ligon*, 206 A.3d 1196, 1198 (Pa. Super. 2019).

In *Commonwealth v. Foust*, 180 A.3d 416 (Pa. Super. 2018), this Court held that "a trial court may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* LWOP sentence unless it finds, beyond a reasonable doubt, that the juvenile is incapable of rehabilitation." *Id.* at 433. This Court additionally

held that we must review individual sentences, rather than an aggregate sentence, in determining whether a juvenile received a *de facto* LWOP sentence. *Id.* at 434. The **Foust** Court explicitly declined to draw a bright-line rule or to identify relevant factors to consider in determining what constitutes a *de facto* LWOP sentence. *Id.* at 438. However, the Court concluded that Foust's individual sentences of 30 years to life[10] did *not* constitute a *de facto* life sentence. *Id.*

Subsequently, in **Commonwealth v. Bebout**, 186 A.3d 462 (Pa. Super. 2018), this Court rejected Bebout's claim that his sentence of 45 years to life constituted a *de facto* LWOP sentence. *Id.* at 470-71. The **Bebout** Court explained that

> [t]he key factor in considering the upper limit of what constitutes a constitutional sentence, in this narrow context, appears to be whether there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." **Graham**, 560 U.S. at 75 …. Implicit in this standard is the notion it would not be meaningful to provide an opportunity for release based solely on the most tenuous possibility of a defendant's surviving the minimum sentence imposed. To be meaningful or, at least, **potentially** meaningful, it must at least be **plausible** that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits.

**Bebout**, 186 A.3d at 468 (emphasis in original; footnote omitted). Noting that Bebout would be eligible for parole at age 60, the Court reasoned that

_____

[10] The trial court had imposed two consecutive sentences, resulting in an aggregate prison term of 60 years to life. *See Foust*, 180 A.3d at 421.

"his minimum sentence is not so long that it is virtually certain that he could not survive it," and that it was at least plausible that he could live many years beyond his minimum release date. *Id.* at 468, 469.

Here, Carlson received individual sentences of 25 years to life. *See Foust*, 180 A.3d at 434 (instructing this Court to consider individual, as opposed to aggregate, sentences). Carlson was 17 years old at the time he committed the crime; therefore, a minimum sentence of 25 years in prison does not constitute a *de facto* LWOP sentence.[11] *See id.* at 438 (concluding that individual sentences of 30 years to life were not *de facto* LWOP sentences, where appellant was 17 years old at the time of the crime); *Bebout*, 186 A.3d at 470-71 (concluding that sentence of 45 years to life did not constitute a *de facto* LWOP sentence); *Commonwealth v. White*, 193 A.3d 977, 986 (Pa. Super. 2018) (concluding that a prison term of 35 years to life did not constitute a *de facto* LWOP sentence, where appellant had committed the crime when, and been in jail since, he was 17 years old). Accordingly, Carlson's sentence is constitutionally sound, and he is not entitled to relief on these claims.

_____

[11] In his brief, Carlson asks us to consider his aggregate sentence of 50 years to life, as well as the age at which he will become eligible for parole (67 years old) based on the aggregate sentence. However, to do so would be contrary to the directives of the *Foust* Court. *Foust*, 180 A.3d at 434.

In his third claim, Carlson contends that the trial court erred in imposing consecutive sentences, where the two second-degree murder charges arose out of a single act. *See* Brief for Appellant at 18-21.

Carlson's claim challenges the discretionary aspects of his sentence, from which there is no automatic right to appeal. ***Commonwealth v. Disalvo***, 70 A.3d 900, 902 (Pa. Super. 2013).

> Before this Court may reach the merits of a challenge to the discretionary aspects of a sentence, we must engage in a four[-]part analysis to determine: (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]ppellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of the sentence[,] *see* Pa.R.A.P. 2119(f); and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code …. If the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

***Disalvo***, 70 A.3d at 900 (citation and some brackets omitted).

Here, Carlson filed a timely Notice of Appeal, preserved his claim in his Post-Sentence Motion, and included a separate Rule 2119(f) Statement in his brief. *See id.* We therefore proceed to ascertain whether Carlson has raised a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or

(2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (internal citations omitted).

In his Rule 2119(f) Statement, Carlson asserts that the imposition of consecutive sentences for two separate murder convictions resulted in an excessive sentence. Brief for Appellant at 9. Carlson also claims that the sentencing court "disregard[ed] the admonition of the United States Supreme Court … that 'juvenile first-degree murderers are presumptively less culpable than their adult counterparts and, as such, should be sentenced differently.'" *Id.* at 10 (citing *Commonwealth v. Batts* (*"Batts II"*), 163 A.3d 410, 437 (Pa. 2017)). Carlson's claim raises a substantial question. *See Foust*, 180 A.3d at 439; *see also Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." (citation omitted)).

In considering Carlson's claim, we observe the following standard of review:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Caldwell*, 117 A.3d at 770 (citation omitted).

The Sentencing Code provides that

the [trial] court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b). Generally, a court must also consider the sentencing guidelines. *See id.*; *see also Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008). However, the basic sentencing matrix relating to juvenile homicide offenders, 204 Pa. Code § 303.16(b), is not applicable where, as here, the offender was convicted prior to the date of the *Miller* decision. *See Commonwealth v. Melvin*, 172 A.3d 14, 22 (Pa. Super. 2017). Similarly, 18 Pa.C.S.A. § 1102.1,[12] concerning the sentencing of juvenile homicide offenders, applies to those convicted **after** June 24, 2012.

In *Batts II*, the Pennsylvania Supreme Court considered the appropriate discretionary sentencing considerations to apply when resentencing juvenile offenders who were convicted of first-degree murder prior to *Miller*, and for whom an LWOP sentence was deemed inappropriate. *See Batts II*, 163 A.3d at 457-58. The *Batts II* Court instructed sentencing courts to seek guidance from section 1102.1. *Id.*; *see also id.* at 460 (stating that "[t]he sentencing court should fashion the minimum term of incarceration using, as guidance, section 1102.1(a) of the Crimes Code.").

Applying *Batts II* to juvenile offenders convicted of second-degree murder, this Court has also concluded that sentencing courts should consider

_____

[12] Relevant to this appeal, section 1102.1(c) provides for a term of 30 years to life for juveniles convicted of second-degree murder, and who were 15 years of age or older at the time of the offense. 18 Pa.C.S.A. § 1102.1(c)(1).

the requirements of section 1102.1(c) in fashioning a minimum sentence. *Melvin*, 172 A.3d at 22. *But see Commonwealth v. Machicote*, 206 A.3d 1110, 1119 (Pa. 2019) (noting that offenders who were convicted of second-degree murder prior to June 24, 2012, are subject to sentencing pursuant to the previous version of section 1102, under which LWOP is a viable sentence). Thus, juvenile offenders convicted of second-degree murder prior to the *Miller* decision must be sentenced to a maximum period of life in prison, but "they are eligible for parole after a term-of-years specified by the trial court." *Commonwealth v. Olds*, 92 A.3d 1188, 1195 (Pa. Super. 2018).

At the resentencing hearing, the trial court heard testimony from three Commonwealth witnesses and five defense witnesses, including Carlson. The trial court also received four victim impact statements, which were admitted into evidence during the hearing. *See* N.T., 6/19/18, at 7. Additionally, the Commonwealth presented evidence regarding Carlson's behavior while in prison, including approximately 60 misconducts between 2003 and 2016. *See id.* at 50-54, 61-71, 87; *see also* Trial Court Opinion, 11/27/18, at 8.

The trial court specifically stated that it had considered the provisions of 18 Pa.C.S.A. § 1102.1, while recognizing that it was not bound by that statute because Carlson was convicted prior to the *Miller* decision. *See* N.T., 6/19/18, at 93. After weighing all of the relevant factors, the trial court "determined that sentences below the applicable guidelines were appropriate in this case." Trial Court Opinion, 11/27/18, at 9. During the hearing, the trial court specifically considered several factors in favor of mitigation,

including Carlson's involvement in teaching other prisoners physical education and spelling, his completion of several courses and his GED, and the emotional and financial support he would have available upon his release. **See** N.T., 6/19/18, at 92-93. The court also stated that Carlson had been a model prisoner for the prior two years, and made a finding that Carlson "is not incorrigible to the point where he cannot be rehabilitated." **Id.**

In directing the sentences to run consecutively, the trial court stated its finding that the criminal act was not "attributable to juvenile impetuousness[,] nor was it an act where [Carlson] was not fully aware of the … potential consequences of his actions." **Id.** at 94. Specifically, the court referred to trial testimony that, at some time prior to the fire, Carlson had told his former girlfriend, "if I can't have you, nobody will." **Id.** at 91. The trial court additionally observed that Carlson's "actions indicate … that he did exhibit criminal sophistication in his planning and in his commission of this criminal act." **Id.** at 94; **see also id.** at 92 (stating that the circumstantial evidence indicated forethought and advanced planning).

Based upon the foregoing, we conclude that the trial court adequately considered all relevant factors, including relevant mitigating evidence, as well as the provisions of section 1102.1, prior to imposing individual sentences below the guidelines set forth in section 1102.1. **See Batts II**, 163 A.2d at 457-58; **Melvin**, 172 A.3d at 22. Further, the trial court stated on the record its reasons for imposing the sentences consecutively, and the court was within its discretion to do so. **See Commonwealth v. Zirkle**, 107 A.3d 127, 133

(Pa. Super. 2014) (stating that "the imposition of consecutive rather than concurrent sentences lies within the sound discretion of the sentencing court." (citation omitted)). We conclude that the trial court's sentence was not improperly excessive, and we otherwise discern no error in the trial court's discretion. Thus, Carlson is not entitled to relief on this claim.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  11/27/2019