J. A20040/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENNETH CARL CRAWFORD, III, | : | No. 1768 MDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered April 30, 2018,
in the Court of Common Pleas of Luzerne County
Criminal Division at No. CP-40-CR-0001480-2000

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED FEBRUARY 14, 2020**

Kenneth Carl Crawford, III, appeals from the April 30, 2018 aggregate judgment of sentence of 52 years to life imprisonment imposed after he was resentenced following the grant of post-conviction collateral relief[1] pursuant to ***Miller v. Alabama***, 567 U.S. 460 (2012), and ***Montgomery v. Louisiana***, 136 S.Ct. 718 (2016).[2]  After careful review, we affirm the judgment of sentence.

---

[1] ***See*** Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.

[2] In ***Miller***, the United States Supreme Court recognized a constitutional right for juveniles, holding that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition against 'cruel and unusual punishments.'" ***Miller***, 567 U.S. at 465. In ***Montgomery***, the Supreme Court held that its rule announced in ***Miller*** applies retroactively on collateral review. ***Montgomery***, 136 S.Ct. at 736.

A prior panel of this court set forth the relevant facts of this case as follows:

> In July 1999, [appellant], then 15 years of age, was traveling with a companion, David Lee Hanley, when they found themselves at the Pilot Truck Stop near the City of Hazelton, Luzerne County. They were, at the time and place, looking for a ride to Georgia. [Appellant] and Hanley were picked up by Diane Algar (Algar) and Jose Molina (Molina) and taken to the Algar trailer at Paradise Campground. The two remained as guests for approximately two days, during which time they were fed and entertained by Algar and Molina. On the morning of the second day [July 19, 1999], Algar and Molina were shot and killed inside the trailer. [Appellant] and Hanley left the scene in Algar's vehicle.
>
> The investigation into the killings led Pennsylvania State Police to search for two hitchhikers heading to Georgia. Following a segment on television's "America's Most Wanted," the authorities received a tip which led to the discovery of the Algar vehicle in Winchester, Virginia, where it was abandoned by [appellant] and Hanley. At that point, the two boarded a bus bound for Rome, Georgia, but they decided to split up in Tennessee. Hanley continued south, while [appellant] proceeded toward the Midwest.
>
> . . . .
>
> [Appellant], when discovered, was being detained in a juvenile detention center in Missouri for an Illinois assault offense. [He pleaded guilty to that offense, which predated the present offenses, and was sentenced to a juvenile facility at Joliet, Illinois.] Eventually, [appellant] was extradited to Pennsylvania.

*Commonwealth v. Crawford*, No. 479 MDA 2001, unpublished memorandum at 1-2 (brackets in original) (Pa.Super. filed May 30, 2002).

On January 24, 2001, a jury found appellant guilty of two counts each of first-degree murder, criminal conspiracy, and aggravated assault, and one count each of robbery, theft by unlawful taking or disposition, and attempted theft.[3] Appellant was sentenced to two consecutive terms of life imprisonment without the possibility of parole ("LWOP") on February 27, 2001. On May 30, 2002, a panel of this court affirmed appellant's judgment of sentence, and appellant did not seek allowance of appeal with our supreme court. *Id.* Between 2005 and 2014, appellant unsuccessfully litigated two separate PCRA petitions.

On March 24, 2016, appellant filed his third PCRA petition, arguing that his two consecutive LWOP sentences were unconstitutional under *Miller*/*Montgomery*. As noted, the PCRA court granted appellant relief and ordered that he be resentenced. Following a three-day hearing, the sentencing court resentenced appellant to an aggregate term of 52 years to life imprisonment on April 30, 2018.[4] In fashioning appellant's sentence, the

---

[3] 18 Pa.C.S.A. §§ 2501(a), 903(a)(1), 2702(a)(1), 3701(a)(1), 3921(a), and 901(a), respectively.

[4] Specifically, appellant was resentenced as follows: 26 years to life imprisonment on Count 1 (first-degree murder – Victim 1); 26 years to life imprisonment on Count 2 (first-degree murder – Victim 2), consecutive to Count 1; 240 to 480 months' imprisonment on Count 3 (criminal conspiracy), concurrent to Count 1; 240 to 480 months' imprisonment on Count 4 (criminal conspiracy), concurrent to Count 3; 84 to 168 months' imprisonment on count 7 (robbery), consecutive to Count 4; 21 to 42 months' imprisonment on Count 8 (theft by unlawful taking or disposition), consecutive to Count 7; and 21 to 42 months' imprisonment on Count 9 (attempted theft), consecutive to Count 8.

sentencing court granted appellant 6,569 days' credit for time-served from May 5, 2000 to April 30, 2018, and noted that appellant was not "permanently incorrigible" nor incapable of rehabilitation. (**See** notes of testimony, 4/30/18 at 6.) Appellant filed a timely post-sentence motion to vacate or reconsider his sentence, which was denied on June 22, 2018. On July 25, 2018, appellant filed an untimely notice of appeal that was dismissed by this court for failure to file a docketing statement, in accordance with Pa.R.A.P. 3517. Following the reinstatement of his direct appeal rights **nunc pro tunc**, appellant filed the instant appeal.[5]

Appellant raises the following issues for our review:

[I.] Whether [appellant's] aggregate sentences of 52 years to life (Counts 1 and 2) and of 50.5 to 101 years (Counts 3 through 9) are unconstitutional **de facto** LWOP sentences that violate the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution because [appellant] is capable of rehabilitation and [appellant's] first opportunity for release under either would come more than 16 years **after** his undisputed life expectancy[?]

[II.] Whether the sentencing court violated procedural protections required by the United States and Pennsylvania Constitutions by failing to make a finding as to [appellant's] life expectancy and to consider that finding while crafting [appellant's] sentence[?]

[III.] Whether [appellant's] maximum sentence of life imprisonment exceeds the maximum

---

[5] The record reflects that appellant has timely complied with Pa.R.A.P. 1925(b).

- 4 -

punishment allowed by statute because the entire Pennsylvania sentencing scheme for first- and second-degree murder was struck down as unconstitutional and the only remaining constitutional sentencing scheme for [appellant] is the sentencing scheme for the lesser included offense of third-degree murder, [18 Pa.C.S.A.] § 1102(d), which has a maximum statutory punishment of 40 years, not life imprisonment[?]

[IV.]   Whether the sentencing court was required to give individualized consideration to the proportionality of [appellant's] maximum sentence of life imprisonment to safeguard [appellant's] rights under the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution[?]

[V.]    Whether [appellant's] sentence is manifestly excessive because the sentencing court focused solely on the seriousness of [appellant's] offenses, failed to consider mitigating factors (such as the extent of [appellant's] rehabilitation and the fact that [appellant] does not pose a continuing threat to the public), and failed to adequately explain its reason for imposing a sentence where the first opportunity for release would come more than 16 years after [appellant's] undisputed life expectancy[?]

Appellant's brief at 6-7 (emphasis in original). For ease of discussion, we have elected to renumber appellant's issues and will address them in a different order than originally presented in his appellate brief.

**I.**

Appellant first contends that his aggregate judgment of sentence of 52 years to life imprisonment constituted an unconstitutional ***de facto*** LWOP

sentence "because [he] is capable of rehabilitation and [his] first opportunity for release under either would come more than 16 years after his undisputed life expectancy." (*Id.* at 6, 24.) We disagree.

"[A] claim challenging a sentencing court's legal authority to impose a particular sentence presents a question of sentencing legality." *Commonwealth v. Batts*, 163 A.3d 410, 434-435 (Pa. 2017) (citations omitted). "The determination as to whether a trial court imposed an illegal sentence is a question of law; an appellate court's standard of review in cases dealing with questions of law is plenary." *Commonwealth v. Crosley*, 180 A.3d 761, 771 (Pa.Super. 2018) (citation omitted), *appeal denied*, 195 A.3d 166 (Pa. 2018).

Here, appellant's aggregate judgment of sentence of 52 years to life imprisonment was comprised of, *inter alia*, two consecutive terms of 26 years to life imprisonment and is consistent with this court's recent holdings in *Commonwealth v. Foust*, 180 A.3d 416 (Pa.Super. 2018), and *Commonwealth v. Bebout*, 186 A.3d 462 (Pa.Super. 2018). *Foust* involved a 17-year-old defendant who was convicted of two counts of first-degree murder and resentenced pursuant to *Miller*/*Montgomery* to two consecutive terms of 30 years to life imprisonment. *Foust*, 180 A.3d at 421. The *Foust* court held that "a trial court may not impose a term-of-years sentence on a juvenile convicted of homicide if that term-of-years sentence equates to a *de facto* [life-without-parole] sentence unless it finds, beyond a reasonable

doubt, that the juvenile is incapable of rehabilitation." *Id.* at 433. The ***Foust*** court determined that term-of-years sentence of 30 years' imprisonment did not constitute a ***de facto*** LWOP sentence. *Id.* at 438. In reaching this conclusion, the ***Foust*** court explicitly "decline[d] to draw a bright line in this case delineating what constitutes a ***de facto*** LWOP sentence and what constitutes a constitutional term-of-years sentence" and instead limited itself to the facts of the case before it. *Id.* The ***Foust*** court further noted that "the individual sentences," rather than the aggregate sentence, "must be considered when determining if a juvenile received a ***de facto*** LWOP sentence." *Id.* at 434.

***Bebout*** involved a 15-year-old defendant who was resentenced to 45 years to life imprisonment for second-degree murder and related offenses, pursuant to ***Miller***/***Montgomery***. ***Bebout***, 186 A.3d at 468. The ***Bebout*** court concluded that "[t]he key factor in considering the upper limit of what constitutes a constitutional sentence," as opposed to a ***de facto*** LWOP sentence for a juvenile who was not deemed incapable of rehabilitation, is whether **there is "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation."** *Id.* (citation omitted; emphasis added). "To be meaningful or, at least, potentially meaningful, it must at least be plausible that one could survive until the minimum release date with some consequential likelihood that a non-trivial amount of time at liberty awaits." *Id.* In reaching this conclusion, the ***Bebout*** court reasoned

that although the 45-years-to-life sentence "falls between the 'clearly' constitutional and unconstitutional parameters suggested by the *Foust* Court[,]" the defendant failed to show that a sentence that authorized his release at age 60 was the functional equivalent of a life-without-parole sentence. *Id.* at 467.

Likewise, in the instant matter, appellant has failed to demonstrate that his judgment of sentence does not afford him a meaningful opportunity for release or that he has no plausible chance of survival until his minimum release date. While appellant will not be eligible for parole until age 68, albeit older than the defendant in *Bebout*, appellant has not shown any significant difference between the ages at the earliest possible point of release that would distinguish his case. Accordingly, we decline to find that appellant's sentence constituted a *de facto* LWOP sentence.

## II.

In a related claim, appellant contends that the sentencing court erred "by failing to make a finding as to [appellant's] life expectancy and to consider that finding while crafting [his] sentence." (Appellant's brief at 6, 46.) In support of this contention, appellant relies on the recent Third Circuit case, *United States v. Grant*, 887 F.3d 131 (3d Cir. 2018), *rehearing en banc granted and opinion vacated*, 905 F.3d 285 (3d Cir. 2018).

In *Grant*, the United States Court of Appeals for the Third Circuit discussed *de facto* LWOP sentences and concluded that a judge is required

to impose a sentence "so that a juvenile offender who is capable of reform is not sentenced to a term-of-years beyond his or her expected mortality." *Id.* at 149. The *Grant* court held that a sentencing court is required to conduct an individualized evidentiary hearing and make factual findings as to a defendant's life expectancy, following consideration of "any evidence made available by the parties that bears on the offender's mortality, such as medical examinations, medical records, family medical history, and pertinent expert testimony." *Id.* at 150.

Upon review, we find that appellant is not entitled to relief on this claim. Contrary to appellant's contention, neither the United States Supreme Court nor the Pennsylvania Supreme Court have mandated that a sentencing court make factual findings as to a defendant's life expectancy prior to resentencing under *Miller*/*Montgomery*. *Grant* is clearly not binding upon this court and, in any event, was recently vacated and accepted for *en banc* consideration. Accordingly, appellant's second claim must fail.

### III. & IV.

Appellant next argues that because "the entire Pennsylvania sentencing scheme for first-and-second-degree murder was struck down as unconstitutional[,]" the sentencing court should have resentenced him for first-degree murder in accordance with the sentencing scheme for the lesser included offense of third-degree murder, which has a maximum statutory punishment of 40 years. (Appellant's brief at 7, 57.) Appellant further

contends that his mandatory maximum sentence of life in prison, or "life tail," does not comport with the holdings in **Miller**/**Montgomery** that resentenced juveniles be given individualized sentences and violates the prohibition against "cruel and unusual punishment" set forth in the Eighth Amendment to the United States Constitution.  (**Id.** at 7, 54.)  We disagree.

These issues were addressed by our supreme court in **Batts** and more recently by this court in **Foust** and **Commonwealth v. Blount**, 207 A.3d 925 (Pa.Super. 2019), **appeal denied**, 218 A.3d 1198 (Pa. 2019).  Specifically, the **Blount** court stated as follows:

> For those defendants [convicted of first or second-degree murder prior to June 25, 2012,] for whom the sentencing court determines a [LWOP] sentence is inappropriate, it is our determination here that they are subject to a mandatory maximum sentence of life imprisonment as required by Section 1102.1(a), accompanied by a minimum sentence determined by the common pleas court upon resentencing[.]

**Blount**, 207 A.3d at 938, citing **Commonwealth v. Seskey**, 170 A.3d 1105, 1108 (Pa.Super. 2017), quoting **Batts**, 163 A.3d at 421 (some brackets in original).

As noted by the **Foust** court, in light of our supreme court's decision in **Batts**, "there was valid statutory authority to impose a maximum sentence of life imprisonment for [a] first-degree murder conviction." **Foust**, 180 A.3d at 430.  Contrary to appellant's contention, this court has explicitly held that such mandatory maximums do not violate the Eighth Amendment's ban on

cruel and unusual punishment or the mandates of individualized sentencing. *See Commonwealth v. Olds*, 192 A.3d 1188, 1197-1198 (Pa.Super. 2018) (holding that, the imposition of mandatory maximum sentence of life imprisonment for a juvenile defendant convicted of second-degree murder prior to *Miller* was constitutional and did not violate Eighth Amendment's ban on cruel and unusual punishment), *appeal denied*, 199 A.3d 334 (Pa. 2018); *Seskey*, 170 A.3d at 1107-1108 (holding that, the trial court was required to impose a mandatory maximum sentence of life imprisonment when it resentenced a juvenile defendant convicted of first-degree murder prior to *Miller*). Accordingly, appellant's claims must fail.

## V.

Having determined that appellant's sentence is not illegal, we turn to his remaining claim that the sentencing court abused its discretion by: (1) "focus[ing] solely on the seriousness of [his] offenses" and (2) failing to consider various mitigating sentencing factors in imposing a "manifestly excessive" sentence, including "the extent of [appellant's] rehabilitation and the fact that [appellant] does not pose a continuing threat to the public." (Appellant's brief at 6, 51.) Appellant avers that "[t]he sentencing court [] abused its discretion by imposing an excessive sentence without fully explaining [whether it] adequately assessed the sentencing factors set forth in *Miller*." (*Id.* at 53.)

> Sentencing is a matter vested in the sound discretion
> of the sentencing judge, and a sentence will not be

> disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa.Super. 2014) (citation omitted), *appeal denied*, 117 A.3d 297 (Pa. 2015)

Where an appellant challenges the discretionary aspects of his sentence, as is the case here, the right to appellate review is not absolute. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Instantly, the record reveals that appellant has satisfied these prerequisites. Appellant filed a timely notice of appeal and preserved his issue in a post-sentence motion. Appellant has also included a statement in his brief that comports with the requirements of Pa.R.A.P. 2119(f). (***See***

appellant's brief at 20-24.) Additionally, appellant presents a substantial question for our review. A "claim that the sentence is manifestly excessive, inflicting too severe a punishment, . . . present[s] a substantial question. Moreover, the sentencing court's failure to set forth adequate reasons for the sentence imposed also raises a substantial question." *Commonwealth v. Hicks*, 151 A.3d 216, 227 (Pa.Super. 2016) (citations omitted), *appeal denied*, 168 A.3d 1287 (Pa. 2017). Accordingly, we may review the merits of appellant's claim.

In situations where the Commonwealth requests a sentence LWOP, the sentencing court must consider the statutory sentencing factors set forth in 18 Pa.C.S.A. 1102.1(d) ("the *Miller* factors") on the record, prior to imposing sentence. *Commonwealth v. Machicote*, 206 A.3d 1110, 1120 (Pa. 2019). Specifically, as our supreme court stated in *Batts*, compliance with *Miller* requires consideration of the following:

> [A]t minimum it should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

*Batts*, 163 A.3d at 421 n.5 (citations omitted).

However, where, as here, the Commonwealth does not give notice of its intention to seek an LWOP sentence and the sentencing court sentences "a juvenile offender to life **with** the possibility of parole, traditional sentencing considerations apply[,]" and the sentencing court considers the factors set forth in 42 Pa.C.S.A § 9721(b). **Batts**, 163 A.3d at 460 (citation omitted; emphasis added). Section 9721(b) provides that the sentencing court shall fashion a sentence "that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

Here, the sentencing court conducted a comprehensive evidentiary hearing prior to appellant's resentencing that commenced on January 29, 2018, and concluded on January 31, 2018. Our review of the record establishes that the sentencing court considered and weighed numerous factors in fashioning appellant's sentence, including both the "**Miller** factors" and the traditional sentencing factors set forth in Section 9721(b); the testimony and exhibits presented by the parties at the three-day evidentiary hearing; appellant's troubled childhood and age at the time of the offense; and the gravity of the crime. Contrary to appellant's contention, the record further reflects that the sentencing court took into consideration the life expectancy report completed by Dr. Evelyn J. Paterson and "[appellant's] rehabilitative accomplishments and achievements while under the care of the

J. A20040/19

department of corrections." (Sentencing court opinion, 11/14/18 at 15, 17-18.)

At the April 30, 2018 resentencing hearing, the sentencing court stated the following rationale in support of appellant's aggregate term of 52 years to life imprisonment:

> Sentences in Pennsylvania must be individualized. The Court has considered **inter alia** the sentencing memorandum submitted by the parties, the presentence investigation [("PSI")] report, the trial transcript, and all testimony and exhibits introduced at the resentencing evidentiary hearing, along with the guidance of Section 1102.1(a) of the crimes code, and traditional sentencing considerations found in Section 9721.1 that the Court shall follow the general principle that the sentence imposed should call for confinement, that it's consistent with the protection of the public, gravity of the offense as it relates to the impact on the life of the victim and on the community[,] and the rehabilitative needs of [appellant].
>
> The Court is well aware that [appellant] was 15 at the time of the crime and the circumstances of [his] childhood, along with his rehabilitative accomplishments and achievements while under the care of the Department of Corrections. The Court is also mindful of the senseless, tragic murders of Diana Algar and Jose Molina, along with all attending circumstances of their deaths, and the recognized principle that all murders are heinous in nature.
>
> The Court has not found [appellant] permanently incorrigible as understood in existing law and recognizes an offender must be held accountable and serve a sentence commensurate with those committed acts in accordance with existing law. The Court also notes it reviewed actuarial life expectancy data, along with estimates and averages of life

- 15 -

> expectancy as introduced in the report of Dr. [Paterson].
>
> The Court further acknowledges that as there is a possibility of rehabilitation, [appellant] must be provided some meaningful opportunity to obtain a release based on demonstrated maturity and rehabilitation. A state is not required to guarantee eventual freedom.

Notes of testimony, 4/30/18 at 5-6 (emphasis added).

Additionally, the sentencing court was in possession of a PSI report and indicated that it reviewed it. (Sentencing court opinion, 11/14/18 at 14; **see also** notes of testimony, 4/30/18 at 5.) Where the trial court has the benefit of a PSI report, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Antidormi**, 84 A.3d 736, 761 (Pa.Super. 2014) (citation omitted), **appeal denied**, 95 A.3d 275 (Pa. 2014). Accordingly, for all the foregoing reasons, we find that appellant's challenges to the discretionary aspects of his sentence must fail.

Judgment of sentence affirmed.

Gantman, P.J.E. did not participate in the consideration or decision of this case.

J. A20040/19

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/14/2020

- 17 -